UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ZHONG JIAN ZHU,

                Petitioner,

v.

TODD BLANCHE et al.,

                Respondents.

_____/

Case No. 1:26-cv-1555

Honorable Robert J. Jonker

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.)  For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## BACKGROUND

Petitioner is a native and citizen of the People's Republic of China.  (Pet., ECF No. 1, PageID.4.)  He entered the United States in 2011 without inspection.  (*Id.*, PageID.5.)  On July 11, 2019, an Immigration Judge ordered Petitioner removed in absentia when he failed to appear at his scheduled court hearing.  (*Id.*, PageID.6; McClure Decl. ¶ 12, ECF No. 5-1, PageID.44.)  Petitioner did not appeal that decision, rendering it administratively final on August 11, 2019.  (Pet., ECF No. 1, PageID.6.)

On February 25, 2023, Petitioner was arrested and charged with multiple crimes, including Criminal Possession of a Weapon in the 2nd Degree: Loaded Firearm (265.03 SUB 01B), Criminal Possession of a Controlled Substance in the 5th Degree: Ketamine 1000 Milligram (220.06 SUB

06), and Criminal Possession of a Weapon in the 4th Degree: Ghost Gun (265.01 SUB 09).  (Resp., ECF No. 5, PageID.34.)  Petitioner was not arraigned for these charges.  (*Id.*)

On December 23, 2025, ICE agents arrested Petitioner to effectuate his removal.  (*Id.*)  On February 27, 2026, ICE submitted a travel document request for Petitioner to ICE headquarters. (McClure Decl. ¶ 16, ECF No. 5-1, PageID.44.)  As of May 14, 2026, that request remains "pending." (*Id.*)

On March 23, 2023, ICE conducted a 90-day Post Order Custody Review.  (Resp., ECF No. 5, PageID.34.)  After that review, it was determined that Petitioner would remain in custody because he is both a flight risk and a danger to the community.  (*Id.*)  On April 10, 2026, "the ERO attaché submitted [Petitioner's] case to the People's Republic of China National Immigration Administration for nationality verification checks."  (McClure Decl. ¶ 16, ECF No. 5-1, PageID.45.)  ICE acknowledges that "it generally takes a period of months for ERO to receive a response from the government of China" for verification of nationality alone. (*Id.*)

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to accept jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner.  (Pet., ECF No. 3, PageID.16–17.) In an order entered on January 13, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted.  (Order, ECF No. 5.)  Respondents filed their response on January 16, 2026. (ECF No. 6.)

## HABEAS CORPUS LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  Section 2241 of Title 28 confers the federal courts with the power to issue

writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States."  This includes challenges by non-citizens in immigration-related matters.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001);  *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).

**DISCUSSION**

The parties agree that Petitioner is subject to a final order of removal.  As a result, Petitioner's present detention is governed by 8 U.S.C. § 1231.  However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment.  In response, Respondents argue that Petitioner's continued detention for purposes of removal is authorized by *Zadvydas*.

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  8 U.S.C. § 1231(a)(1)(A).  "During the removal period, the Attorney General shall detain the alien."  *Id.* § 1231(a)(2)(A).  8 U.S.C. § 1231(a)(6) further provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court considered whether 8 U.S.C. § 1231(a)(6) authorizes indefinite detention when no other country is willing to take a person who has been ordered removed.  533 U.S. at 682.  In answering that question, the Court noted that the purpose of the statute was to assure the "alien's presence at the moment of removal." *Id.* at 699.  Therefore, the Court concluded that the removal itself must be reasonably foreseeable to fall within post-removal-order detention authorized by the statute. *Id.*  The Court indicated that there was no

specific point in time at which the detention became constitutionally impermissible, and that the allowable period would vary from case to case. *Id.* Still, to assist the lower courts in making the difficult judgment calls about the lawfulness of detention, the Court designated six months as a "presumptively reasonable period of detention." *Id.* at 701. Even after six months , though, the Court made clear that the detention may continue unless the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Under this framework, it is the petitioner's burden to come forward with evidence showing that removal is not significantly likely to occur sometime soon. *Id.* Only after the petitioner has come forward with such evidence does the burden flip to the respondents, who must then show evidence that the removal is, in fact, reasonably foreseeable. *See Abdalla v. Johnson*, No. 16-14422, 2017 WL 345731, at *4 (E.D. Mich. Jan. 24, 2017) (rejecting Petitioner's claim that detention of more than a year violated *Zadvydas* when the petitioner "provide[d] no evidence" that removal was unlikely to occur in the near future). In this case, Petitioner's detention has not yet exceeded the six months the Supreme Court found "presumptively reasonable." But even using the burden-shifting that applies after six months, Petitioner has not made a convincing case for release.

Here, Petitioner has pointed to the fact that respondents have repeatedly tried—and failed—to obtain travel documents for Petitioner. (Pet., ECF No. 1, PageID.18.) Even assuming for the sake of argument that such evidence is sufficient to allow the petitioner to satisfy his burden under *Zadvydas*, the government has responded by showing that ICE has submitted Petitioner's case to the People's Republic of China National Immigration Administration for review. (McClure Decl. ¶ 18, ECF No. 5-1, PageID.45) Thus, at this point in time, Petitioner is not in the state of "indefinite, perhaps permanent, detention" that the Court in *Zadvydas* said would violate the

constitution.  *Zadvydas*, 533 U.S. at 699; *see also Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020) (holding that a detention of over two years was constitutionally permissible because the removal was likely to occur once Petitioner's appeals were concluded).

The Court recognizes that continued detention may, over time, come to resemble the kind of indefinite confinement that *Zadvydas* may not permit.  "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [has] to shrink." *Zadvydas*, 533 U.S. at 701.  Courts applying this principle recognize that even where the Government continues to pursue removal in good faith, the passage of time can eventually erode the reasonableness of continued detention.  *See Martinez*, 968 F.3d at 565 (explaining that prolonged detention may become unreasonable if the petitioner later demonstrates that removal is no longer likely).

Here, however, the Court is not yet faced with that situation.  An immigration official has testified that the nationality verification process has been underway since April 10, 2026. (McClure Decl. ¶ 18,  ECF No. 5-1, PageID.45.)  Moreover, that same official has stated that receiving responses from China typically takes several months, which suggests that there is nothing unusual about China having failed to respond within the roughly two months that have passed since the submission was made.  (*Id.*)  Indeed, the same official there have successful removals of non-citizens to China.  At this point, it seems to the Court that Petitioner's removal remains significantly likely to occur in the reasonably foreseeable future.  Accordingly, the petition will be denied without prejudice. Should the Government's efforts to secure removal ultimately stall or fail to bear fruit, Petitioner remains free to file a new petition asserting that continued detention is no longer reasonable.

**ADDITIONAL CONSIDERATION**

In light of the fact that Petitioner remains free to file a new Petition in the future, it seems appropriate to briefly comment on some unusual aspects of Petitioner's brief that the Court noted during its review of the case. To begin, the Court notes that the paragraph of the petition that discusses venue—paragraph 4—recites that the "Eastern District of Michigan" is an appropriate venue, even though the case was filed in the Western District, which is where Petitioner is detained. (Pet., ECF No. 1, PageID.4.) Additionally, the petition is signed with a "pro se" designation, which indicates to the Court that Petitioner is filing it on his own behalf. (ECF No. 1, PageID.25.) Notwithstanding this designation, several aspects of the petition are inconsistent with a pro se posture. For example, the petition contains a paragraph discussing the appropriateness of attorney's fees, which makes no sense in the context of a pro se petition. (*Id.* at PageID.24.) And the signature line contains a "care of" designation listing a person whose mailing address is located in Brooklyn, New York. (*Id.* at PageID.25.) At present, the Court does not feel that it is necessary to make sense of these irregularities. Should Petitioner decide to file another Petition in the future, though, the Court expects that these aspects of the future Petition will either not be present or else will be adequately explained.

**CONCLUSION**

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated:    June 1, 2026                                     /s/ Robert J. Jonker
                                                          Robert J. Jonker
                                                          United States District Judge

6